**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-03239-CMA

DONNA G. MARTINEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS**

---

    This matter is before the Court on review of the Commissioner's decision to deny Plaintiff Donna G. Martinez's ("Plaintiff") application for social security disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33.  Jurisdiction is proper under 42 U.S.C. § 405(g).

## I. BACKGROUND

    Plaintiff was born in August 1966.  She completed high school and worked in the past as an aide at a boys' and girls' home and a cashier.  Plaintiff applied for Social Security disability benefits on July 29, 2004, claiming a disability date of February 22, 1999, arising from "back pain, fatigue, depression, osteoarthritis, fibromyalgia".  Plaintiff later amended her disability onset date to July 1, 2004, at which time she was 37 years old.  (Doc. # 20 at 1, Case No. 09-cv-00668-CMA); (AR at 566-77).

From there, Plaintiff's foray into the cavernous world of the Social Security Administration decisions and judicial review of those determinations began. On March 16, 2006, Administrative Law Judge ("ALJ") E. William Shaffer held a hearing, then issued a decision denying Plaintiff's request for benefits on July 21, 2006. The Appeals Council denied Plaintiff's request for review of that decision. (Doc. # 20 at 1-2, Case No. 09-cv-00668-CMA.) Plaintiff sought judicial review of ALJ Shaffer's decision (Doc. # 3, Case No. 07-cv-00254-JLK), and Defendant filed an Unopposed Motion to Remand on the grounds that "SSA's Appeals Council, in its role as finder of fact, has further reviewed Plaintiff's case and determined that a remand for further proceedings is appropriate." (Doc. # 22, Case No. 07-cv-00254-JLK.) Accordingly, Judge Kane granted Defendant's Unopposed Motion for Remand. (Doc. # 23, Case No. 07-cv-00254-JLK.) The Appeals Council then remanded the case to an ALJ with specific instructions to remedy the errors. (Doc. # 20 at 2-4, Case No. 09-cv-00668-CMA.)

ALJ Shaffer held a supplemental hearing on July 10, 2008 during which, he obtained testimony from two medical experts—one of which was Dr. Robert Pelc, a licensed psychologist. (AR at 524-62.) On August 28, 2008, ALJ Shaffer again issued a decision denying Plaintiff's request for benefits. (AR at 433-51.) Plaintiff again sought judicial review of that decision after the Appeals Council declined to assume jurisdiction. (Doc. # 1, Case No. 09-cv-00668-CMA.) On April 29, 2010, this Court issued an opinion affirming ALJ Shaffer's decision with respect to Plaintiff's physical ailments, but reversing his decision regarding her mental limitations. (Doc. # 20 at 1-2, Case No. 09-cv-00668-CMA.)

Again, the case was remanded and a hearing was held, this time before ALJ Musseman, on November 4, 2010. (AR at 911-30.) ALJ Musseman again received testimony from Dr. Pelc. (*Id.*) On February 7, 2011, ALJ Musseman denied Plaintiff's request for benefits. (AR at 680-91.) On February 16, 2012, the Appeals Council assumed jurisdiction and again remanded the case back to the ALJ because it determined that his decision did not fully comply with this Court's 2010 Order. ALJ Musseman held yet another hearing on August 14, 2014, and on September 7, 2012, issued a decision denying Plaintiff's request for benefits. (AR at 639-40.) In applying the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff had not engaged in substantial gainful activity since July 1, 2004 [Step 1];

2. Plaintiff had the following severe impairments: affective disorder, anxiety, posttraumatic stress disorder (PTSD), and personality disorder [Step 2];

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [Step 3];

4. Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that she can occasionally climb stairs, stoop, bend, kneel, and squat; cannot climb ladders or scaffolds; can occasionally push and pull up to ten pounds; and requires non-complex tasks (SVP 2 or less) and occasional dealing with the public[1];

---

[1] Sedentary work is defined in 20 C.F.R. § 404.1567(a) as: lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

SVP stands for "specific vocational preparation." It is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, *Dictionary of*

5. Plaintiff was unable to perform any past relevant work [Step 4]; and

6. Given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as: call out operator, surveillance systems monitor, and routing clerk.  [Step 5].

Thereafter, Plaintiff filed a request with the Appeals Council for review, which the Council denied on September 7, 2012.  (AR at 563.)

On December 12, 2012, Plaintiff filed this civil action, seeking judicial review of the denial of Social Security benefits.  (Doc. # 1.)  On September 24, 2013, Plaintiff filed her Opening Brief.  (Doc. # 22.)  Defendant, the Commissioner of Social Security, filed a response (Doc. # 25), to which Plaintiff replied (Doc. # 26).

## II. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance*.*"  *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). "Evidence is not substantial if it is overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In so reviewing,

---

*Occupational Titles*, app. C (4th ed. 1991). An SVP of 2 or less corresponds with unskilled work. SSR 00-4p, 65 Fed. Reg. 75,759, 75,760 (Dec. 4, 2000). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).

4

the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

### III.  ANALYSIS

Plaintiff raises one issue for the Court's review: that the ALJ erred when he failed to account for all of Plaintiff's moderate limitations in fashioning her RFC.  In so contending, Plaintiff argues that the "ALJ erred by failing to incorporate the moderate mental limitations assessed by . . . treating psychiatrist, Dr. Nizami" into her RFC.  (Doc. # 22 at 6.)  Plaintiff argues that because the ALJ gave great weight to and adopted the opinion of Dr. Pelc, who agreed with Dr. Nizami's opinion that Plaintiff had several moderate limitations in mental functioning, the ALJ was also obligated to include those limitations in Plaintiff's RFC.  (*Id.* at 6-8.)

In his decision, the ALJ acknowledged that Dr. Nizami opined on a mental impairment questionnaire dated September 18, 2006, that Plaintiff had "moderate limitations in the ability to maintain attention, work with or get along with others without being distracted or distracting, respond to changes and travel to unfamiliar places . . . ."[2] However, Dr. Nizami also identified several marked limitations and concluded that Plaintiff would be unable to complete a normal workday.  The ALJ noted that Dr. Nizami provided little additional documentation in his narrative to support his conclusions expressed on a check-the-box form, treated Plaintiff "infrequently", and recorded no

---

[2]  Specifically, Dr. Nizami indicated, by way of check marks, that Plaintiff had moderate limitations in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods of time; work in coordination with or in proximity to others without being unduly distracted by them; get along with coworkers or peers without distracting them or exhibiting behavioral extremes respond appropriately to changes in a routine work setting; and travel in unfamiliar places.

5

reduction in her Global Assessment Functioning score.  Thus, the ALJ concluded that there was a lack of objective support for Dr. Nizami's "extreme" conclusions and assigned that opinion little weight.  (AR at 572.)[3]

With respect to Dr. Pelc's opinion, which the ALJ adopted and assigned great weight, he noted that Dr. Pelc opined that Plaintiff had

> moderate levels of restrictions in activities of daily living, interacting with others, and in maintaining concentration, persistence or pace. . . . that she can perform relatively simple, two or three step tasks, which can be learned in 30 to 60 days. . . .  [And she] requires minimal to occasional interaction with the public, supervisors, and coworkers.

(AR at 574.)

Plaintiff does not explain how the moderate limitations Dr. Nizami identified do not correspond to the limitations Dr. Pelc identified.  Instead, Plaintiff seems to assume that the two opinions are not complimentary.  However, it is apparent to the Court that in agreeing with Dr. Nizami, Dr. Pelc merely placed the limitations Dr. Nizami identified into broader categories.  Indeed, the Commissioner often breaks down these broad categories into specific limitations as follows:

| **Broad Category** | **Specific limitations** |
|---|---|
| daily living/adaptation limitations | • Ability to respond appropriately to changes in the work setting<br>• Ability to travel to unfamiliar places |
| interacting with others/social interaction limitations | • Ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes |
| maintaining concentration, persistence, or | • Ability to carry out detailed instructions<br>• Ability to maintain attention and concentration for extended periods of time |

---

[3] Plaintiff does not take issue with the ALJ's decision to assign Dr. Nizami's opinion little weight, nor his decision to not account for the marked limitation.  She limits her arguments to whether the ALJ adequately accounted for her moderate limitations in the RFC.

| pace/sustained concentration and persistence limitations | • Ability to work in coordination with or in proximity to others without being distracted by them. |
|---|---|

Therefore, the Court disagrees that Dr. Pelc's opinion somehow failed to account for the limitations set forth by Dr. Nizami. If anything, because Dr. Pelc focused on broader categories of mental functioning, his opinion was over inclusive compared to the more specific limitations suggested by Dr. Nizami. Accordingly, the Court disagrees that the ALJ failed to account for the moderate limitations identified by Dr. Nizami when he adopted and gave great weight to Dr. Pelc's opinion. As such, this case is distinguishable from *Haga v. Astrue*, in which the Tenth Circuit held that an ALJ should explain why he or she rejects some moderate restrictions while adopting others. 482 F.3d 1205, 1208 (2007).[4] In the instant case, the ALJ did not reject Plaintiff's moderate limitations; he accepted them, and indeed adopted them through Dr. Pelc's opinion. (AR at 574) (the ALJ "gives great weight to, and adopts, Dr. Pelc's opinion . . . .")

However, this does not end the Court's inquiry. Next, the Court must assess whether the ALJ's RFC adequately accounted for these limitations.[5]

---

[4] For similar reasons, the Court finds Plaintiff's reliance on *McLeran v. Astrue* is misplaced. No. 09-cv-02924-LTB, 2010 WL 4318579 (D. Colo. Oct. 25, 2010).

[5] Plaintiff, looking back to the 2008 hearing, points to testimony by a VE that a person with the moderate mental limitations identified by Dr. Nizami would be "unable to perform in a competitive labor market." (Doc. # 22, at 11.) Thus, Plaintiff contends, her "moderate mental limitations conclusively establish[] that [she] is disabled from all competitive employment." (*Id.*) Plaintiff's argument is flawed for two reasons. First, the RFC that formed the basis of the ALJ's questions to the VE in 2008 (and ultimately assessed in the 2008 decision) contained **more** physical limitations than the RFC assessed in 2012, which is at issue here. (*Compare* AR at 385 (2008 decision) (sedentary work with additional sit, stand, walking, and sitting limitations) *with* AR at 571 (2012 decision) (no additional sit, stand, walking, and sitting limitations beyond sedentary work classification).) Plaintiff makes no argument that the ALJ erred in assessing

An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Those findings must be supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). The ALJ is responsible for the RFC assessment. 20 C.F.R. § 404.1546(c).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Here, the ALJ accepted Dr. Pelc's opinion that Plaintiff's moderate limitations in activities of daily living, interacting with others, and maintaining concentration, persistence, and pace translated into working environment limitations of performing simple, two to three step tasks, which can be learned in 30 to 60 days and minimal to occasional interaction with the public, supervisors, and coworkers. (AR at 574.) The ALJ adopted this assessment and fashioned an RFC that limited Plaintiff to "non-complex tasks (SVP 2 or less) and occasional dealing with public." The Court therefore determines that the ALJ adequately accounted for Plaintiff's moderate limitations by adopting Dr. Pelc's

---

her physical limitations. Second, a VE testified at the 2012 hearing that a person with the RFC ultimately assigned to Plaintiff could perform the work of a call-out operator, a surveillance system monitor, and a routing clerk. (AR at 852-53.) Thus, the Court is not persuaded that the testimony from 2008 is at all probative in demonstrating that Plaintiff is precluded from all competitive employment. Instead, the VE's 2012 testimony is pertinent to the Court's inquiry and that testimony constitutes substantial evidence supporting the ALJ's finding of no disability.

opinion and incorporating that opinion into the RFC.  While the Court is sympathetic to Plaintiff's decade-long attempt to receive benefits, it cannot say, based on the limited issue before it, that the ALJ committed reversible error.[6]

## IV. CONCLUSION

Accordingly, it is ORDERED that the ALJ's denial of social security disability benefits is AFFIRMED.   It is

FURTHER ORDERED that each party shall pay its own costs and attorneys' fees.  It is

FURTHER ORDERED that oral argument hearing in this matter scheduled for March 5, 2014, at 3:30 PM, is VACATED.

DATED:  February  26 , 2014

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[6] The Commissioner concedes that the RFC did not include Dr. Pelc's opinion limiting Plaintiff's interactions with supervisors and coworkers.  The Court agrees that this omission was harmless.  The position of routing clerk specifically states that "taking instructions-helping" people is not a significant part of the job, *Dictionary of Occupational Titles*, 1991 WL 672123, no. 222.587-038 (4th ed. 1991), and that position exists in significant numbers nationwide.  *See Martinez v. Astrue*, No. 10-cv-00857-SA, 2011 WL 2912817, at *9 (D. Utah 2011) (30,000 jobs in the national economy is a significant number); *Taylor v. Astrue*, No. 11-cv-01425-CMA, 2012 WL 1520179, at *8 (D. Colo. 2012) (25,000 jobs in the national economy is a significant number); *see further* (AR at 853) (VE testimony there are approximately 52,841 jobs nationally).